## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE | § | |
| | § | CASE NO. 23-50546 |
| PALLADIUM CORRAL, LLC | § | |
| | § | CHAPTER 11 |
| DEBTOR | § | |

### PLAN OF REORGANIZATION

Palladium Corral, LLC("Palladium") as Debtor, propose the following *Plan of Reorganization* (as altered, amended, supplemented, or modified, the "**Plan**") for the resolution of the outstanding claims against, and equity interests in, the above-captioned debtor (the "**Debtor**").

### ARTICLE I.

### HISTORY OF THE DEBTOR'S BUSINESS OPERATIONS

Debtor was formed in 2019 as a limited liability corporation in the State of Texas and operates a Golden Corral restaurant located at 9111 W. Loop 1604, Helotes, Texas. The Debtor acquired the land and building and the Golden Corral from GSFG Texas, LLC and Hill Country Golden Corral, LLC for the sum of $2,795,000.00. GSFG owner financed the acquisition and the Debtor executed a promissory note in the amount of $2,775,000. This occurred on February 28, 2020.

Almost immediately after the acquisition, COVID swept through the United States. San Antonio reports its first positive case of COVID-19 with an individual not associated with the quarantining evacuees at JBSA–Lackland in February 2020. In March 2020, Mayor Nirenberg declared a public health emergency and limits gatherings of more than 500 people for one week. Governor Thereafter, Governor Abbott declares a state of disaster for all counties in Texas, invoking emergency powers for his administration, and orders state employees to remote work. cares, nursing homes, and prisons are asked to limit visitations. Shelter in place orders were entered which had a devastating effect on the

restaurant business in general. The Debtor was not immune and its income dropped dramatically.

Even after restaurants were allowed to reopen, it was not until July 2021 before restaurants were operated at full capacity. Throughout this period, the Debtor continued to make its payments to GSFG. However, in order to make these payments and operate, the Debtor was forced to borrow monies at high interest rates wherein the creditors collected their payments daily. In February, the Debtor was unable to make the monthly payment to GSFG and GSFG posted the property for foreclosure. Negotiations ensued to reach an agreement which was not successful and this bankruptcy was filed on May 2, 2023.

## ARTICLE II.

## LIQUIDATION ANALYSIS

To confirm the Plan, the Bankruptcy Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity-interest holders would receive in a Chapter 7 liquidation. Attached as Exhibit "A" is a liquidation analysis.

## ARTICLE III.

## ADMINISTRATIVE CLAIMS

Administrative Claims.        All Allowed Administrative Claims will be paid in full in Cash upon the earlier of (a) thirty (30) days after the Effective Date, or (b) thirty (30) days after the date on which an order allowing such Administrative Claim becomes a Final Order. Provided, however, if an Allowed Administrative Claim is based on liabilities incurred by the Debtor in the ordinary course of its business after the Petition Date, then such Allowed Administrative Claim will be paid in accordance with the terms and conditions of the particular transaction giving rise to such Allowed Administrative Claim without any further action by the holder of such Allowed Administrative Claim.

## ARTICLE IV.

## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

A.    *Classification*

Except for the Claims addressed in Article III hereof, all Claims and Interests are classified in the classes set forth below in accordance with sections 1122 and 1123(a)(1) of the Code. A Claim or an Interest, or any portion thereof, is classified in a particular class only to the extent that any portion of such Claim or Interest fits within the description of that class and is classified in other classes to the extent that any portion of the Claim or Interest fits within the description of such other classes. A Claim or an Interest also is classified in a particular class for the purpose of receiving distributions under the Plan only to the extent that such Claim or Interest is an Allowed Claim or Interest in that class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

| Class | Claims and Interests | Status | Voting Rights |
|-------|---------------------|--------|---------------|
| Class 1 | Priority Tax Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 2 | Secured Claims | Impaired | Entitled to Vote |
| Class 3 | Unsecured Claims | Impaired | Entitled to Vote |
| Class 4 | Existing Equity Interest | Impaired | Entitled to Vote |

B.    *Treatment*

Each holder of an Allowed Claim or Allowed Interest, as applicable, shall receive under the Plan the treatment described below in full and final satisfaction, settlement, release, and discharge of and in exchange for such holder's Allowed Claim or Allowed Interest, except to the extent less favorable treatment is agreed to by the Reorganized Debtor and the holder of such Allowed Claim or Allowed Interest, as applicable. Unless otherwise indicated, the holder of an Allowed Claim or Allowed Interest, as applicable, shall receive such treatment on the Effective Date or as soon as reasonably practicable thereafter.

C.    *Confirmation*

If the Plan is consensual (meaning all impaired classes voted in favor of the Plan), the Court shall confirm the Plan if all of the requirements of section 1129(a), other than paragraph (15) of that section are met.

If the Plan is not consensual (meaning all impaired classes have not voted in favor of the Plan), section 1191(b) provides that the Court shall confirm the Plan that meets the requirements of section 1129(a), other than paragraph (8), (10) and (15) of that section, "if the plan does not discriminate unfairly, and is fair and equitable" with respect to all impaired claims. The Plan does not discriminate unfairly because similarly situated creditors are treated alike. All undisputed Claims will be treated as noted below.

D.    *Default and Remedies After Confirmation*

Debtor shall have a period of twenty (20) days to cure any plan payment not made upon the due date, such cure period to begin the second day of any month during which a payment is due and not paid and continuing for 20 days thereafter. Upon the Debtor's failure to cure any delinquent payment, a creditor may exercise all right under its loan documents, if any, or its state court remedies.

E.    *Treatment of Classes*

**Class 1 – Priority Tax Claims**

*Classification*:

Class 1 consists of the tax claims of the IRS, Comptroller, Resolution Finance and Bexar County.

- There are two components of the IRS Claim: (a) $94,578 priority and (b) $10,280.61 as an unsecured claim. This claim is disputed.
- Resolution Finance in the amount of $240,924.11.  Resolution Finance paid the Debtor's ad valorem taxes for 2021 and 2022.  This claim is disputed only to the extent that payments may not have been credited.
- Texas Comptroller has filed two claims in the amounts of $10,168.23 (franchise tax) and $275,259.11 (sales tax) (Claim Nos. 6 & 7).  These claims are disputed.
- Bexar County ad valorem taxes for 2023 in the amount of $85,045.38.  This claim is not disputed.

*Treatment*:

- IRS-- shall receive deferred cash payments over a period ending no later than five years after the date of the order for relief, of a value, as of the Effective Date, equal

to the full amount of such Priority Tax Claim, with interest on such amount from the Effective Date at an annual rate of interest of 6%.  The IRS shall be paid in equal monthly installments of principal and interest, with all unpaid principal and accrued interest due on the fifth anniversary of the date of the order for relief.  Payments shall commence on the 15th day of October 2023 or 30 days after the Effective Date whichever is longer. The estimated payment is $1,918.00 based on 6% interest on $94,578.00 over 60 months.

- Resolution Finance shall receive deferred cash payments over a period ending no later than five years after the date of the order for relief, of a value, as of the Effective Date, equal to the full amount of such Claim, with interest on such amount from the Effective Date at an annual rate of interest of 12%.  Resolution Trust shall be paid in equal monthly installments of principal and interest, with all unpaid principal and accrued interest due on the fifth anniversary of the date of the order for relief. Payments shall commence on the 15th day of October 2023 or 30 days after the Effective Date whichever is longer. The estimated payment is $3,000.00 based on 12% interest on $240,924.11 over 60 months.

- Comptroller-- shall receive deferred cash payments over a period ending no later than five years after the date of the order for relief, of a value, as of the Effective Date, equal to the full amount of such Claim, with interest on such amount from the Effective Date at an annual rate of interest of 8.5%.  The Comptroller shall be paid in equal monthly installments of principal and interest, with all unpaid principal and accrued interest due on the fifth anniversary of the date of the order for relief. Payments shall commence on the 15th day of October 2023 or 30 days after the Effective Date whichever is longer. The estimated payment is $5,581.00 based on a claim of $275,427.34 at 8.5% interest over 60 months.

- Bexar County shall receive deferred cash payments over a period ending no later than five years after the date of the order for relief, of a value, as of the Effective Date, equal to the full amount of such Claim, with interest on such amount from the Effective Date at an annual rate of interest of 12%.  Bexar County shall be paid in

equal monthly installments of principal and interest, with all unpaid principal and accrued interest due on the fifth anniversary of the date of the order for relief. Payments shall commence on the 15th day of October 2023 or 30 days after the Effective Date whichever is longer. The estimated payment is $1,724.00.00.

- All priority tax claims shall retain their liens (if any) until the claim is paid in full.

*Voting*:

Class 1 is unimpaired under the Plan.

### Class 2 – Allowed Secured Claims

*Classification*:

All allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under § 506 of the Code. If the value of the collateral or setoffs securing the creditor's claim is less than the amount of the creditor's allowed claim, the deficiency will be classified as a general unsecured claim.

- Claim of GSFS to the extent as an allowed secured claim under § 506 of the Code. GSFS has filed a secured claim in the amount of $2,644,830.17. (Claim No. 10) Debtor does not deny the claim is secured but denies the claim for attorney's fees of $40,000.

*Treatment*:

**GSFS** - Debtor shall pay monthly principal and interest payments as set for in the Note held by creditor.  Currently, this amount is $19,627.35 per month. Debtor shall make such payments by February 2, 2040, which is the maturity date for the Note.

As to the pre-petition arrears due and owing (estimated at $85,000), Debtor shall cure such amounts by paying the Allowed Amount of Creditor's pre-petition claim in 36 equal monthly installments of $2,586.00 beginning on the Effective Date (Est. 10/1/2023). GSFS shall retain its lien interest in the Collateral until paid in full.

Confirmation of this Plan shall constitute a cancellation of the acceleration and reinstatement of the maturity date on the Note (and Deed of Trust) upon which such Creditor's claim is based. Pursuant to 11 U.S.C. Section 1123(a)(5)(G), any default under the

Note secured by a valid lien upon the Collateral shall be cured, including any acceleration of maturity provided by the Note, by paying the full amount due and owing to Creditor during the term of this Plan.

Class 2 claims are impaired under the Plan. Holders of Claims in Class 2 are entitled to vote to accept or reject the Plan.

### Class 3 – Unsecured claims

*Classification:*

Class 3 claims are general unsecured claims that are not secured by property of the estate and are not entitled to priority under § 507(a) of the Code.

These are the known unsecured claims:

1) Capybara Capital, LLC - $40,228.75. This claim is disputed. Debtor further asserts this creditor has charged usurious interest in excess of the amount allowed under Texas law. (Claim No. 2)

2) Coca-Cola - $2,854.56. This claim is undisputed. (Claim No. 8)

3) AMEX - $80,974.42. This claim is undisputed. (Claim No. 4)

4) SAWS - $32,951.84. This claim is undisputed. (Claim No. 5)

5) IRS - $10,280.11. This claim is disputed. (Claim No. 3)

6) Apex Funding - $269,000. This claim is disputed. (Claim No. 12)

7) US Foods - $39,599.12. This claim is disputed. (Claim No. 9).

8) CPS - 46,671.47. This claim maybe disputed (Claim No. 13)

*Treatment:*

The debtor shall set aside the cumulative amounts identified as "Yearly Disposable Income Calculation" shown in Exhibit "B" attached hereto, during the period of time which is thirty-six (36) months from the Effective Date of the Plan, which shall be known as the "General Unsecured Creditor Fund". The Debtor shall make the annual payment due to this fund on or before the 12th, 24th and 36th months following the Effective Date of the Plan. All Creditors holding Allowed Unsecured Claims shall be paid a Pro Rata share of funds deposited in the General Unsecured Creditor Fund on an annual basis, with each payment being due on the yearly anniversary of the Effective Date.

*Voting*:

Class 3 is impaired under the Plan. Holders of Claims in Class 3 are entitled to vote to accept or reject the Plan.

**Class 4 – Existing Equity Interests**

*Classification*:

Class 4 consists of all existing equity Interests.

*Treatment*:

All existing equity Interests in the Debtor shall be retained.

*Voting*:

While Class 4 claimants may retain their interest in the Debtor, this Class will not receive any monies.  Holders of Claims in Class 4 are entitled to vote to accept or reject the Plan.

*Special Provision Governing Unimpaired Claims:*

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtor's or the Reorganized Debtor's rights regarding any unimpaired Claim, including, all rights regarding legal and equitable defenses to or setoffs or recoupments against any such unimpaired Claim.

## ARTICLE V.

## MEANS FOR IMPLEMENTATION OF THE PLAN

A.    *Funding*

This Plan is based upon distributions to Creditors by the Debtor, at its option, by means of one or more of the following: (a) cash presently held by the Debtor and cash to be acquired through the operation of its business including cash generated from the operations of its restaurant; (b) collection of its accounts receivables; (c) monies received from any lawsuit the Debtor may bring against creditors identified in Article VI and sale of the business.  Attached is a projection of income, expenses, and plan payments.  (Exhibit B).

B.    The Subchapter V Trustee shall be the Disbursing Agent unless the Court agrees to allow the Debtor to be the disbursing agent.

## ARTICLE VI.
## RETENTION OF CLAIMS

A.    *Retention and Pursuit of Claims.*

Except as otherwise stated herein, any and all Litigation Claims owned by, accruing to or assertable by the Debtor shall remain assets of the Debtor and/or the Reorganized Debtor, as applicable, pursuant to section 1123(b)(3)(B) of the Code, including (but not limited to) those identified as follow: Apex Funding, LLC and Capybara Capital, LLC. Pursuant to section 1123(b)(3)(B) of the Code, the Debtor shall have the right to pursue or not to pursue, or, subject to the terms of this Plan, compromise or settle any Litigation Claims owned or held by the Debtor or its estate as of the Effective Date. From and after the Effective Date, the Reorganized Debtor may commence, litigate, and settle any Litigation Claims or rights to payment or claims that belong to the Reorganized Debtor that may be pending on the Effective Date or instituted by the Reorganized Debtor after the Effective Date. Other than as set forth herein, no other person may pursue such Litigation Claims after the Effective Date. The Debtor may pursue Litigation Claims without the need for filing any motion seeking authority to do the same. Furthermore, any attorney-client privilege, work-product privilege, or other privilege or immunity attaching to any documents or communications (whether written or oral) shall also continue to exist for the benefit of the Debtor and/or Reorganized Debtor, as applicable, and shall vest in the Debtor and/or the Reorganized Debtor and the respective representatives and shall also be preserved for and as to the Debtor and/or the Reorganized Debtor. The Court shall retain jurisdiction to adjudicate any and all Litigation Claims and approve any such settlement, whether commenced prior to or after confirmation of the Plan and the Effective Date.

## ARTICLE VII.
## TREATMENT OF EXECUTORY CONTRACTS

All executory contracts have been rejected. Debtor asserts the deadline to file a rejection claim passed on April 17, 2021.

A.    *Reservation of Rights*

Nothing contained in the Plan shall constitute an admission by the Debtor or any other party that any contract or lease is in fact an Executory Contract or that any Reorganized Debtor has any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtor, or the Reorganized Debtor, as applicable, shall have forty-five (45) days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

## ARTICLE VIII.
## ALLOWANCE AND DISALLOWANCE OF CLAIMS

A.    *Allowance of Claims*

After the Effective Date, the Reorganized Debtor shall have and retain any and all rights and defenses of the Debtor had with respect to any Claim or Interest immediately prior to the Effective Date.

B.    *Claims Administration Responsibilities*

After the Effective Date, the Reorganized Debtor shall have the sole authority (a) to file, withdraw, or litigate to judgment, objections to Claims or Interests, (b) to settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court, and (c) to administer and adjust the claims register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court.

C.    *Time to File Objections to Claims*

Any objections to Claims shall be filed on or before the later of (a) ninety-days (90) days after the Effective Date, and (b) such other period of limitation as may be specifically fixed by the Debtor or the Reorganized Debtor, as applicable, or by a Final Order of the Bankruptcy Court for objecting to such claims.

D.    *Delay of Distribution on a Disputed Claim*

No distribution will be made on account of a Disputed Claim unless and until it is an Allowed Claim.

E.      *Settlement of Disputed Claims*

The Debtor or Reorganized Debtor, as applicable, will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Federal Rule of Bankruptcy Procedure 9019.

F.      *Setoff and Recoupment*

Except as expressly provided in this Plan, each Reorganized Debtor may, pursuant to section 553 of the Code, set off and/or recoup against any distributions to be made on account of any Allowed Claim, any and all claims, rights, and Litigation Claims that such Reorganized Debtor may hold against the holder of such Allowed Claim to the extent such setoff or recoupment is either (a) agreed in amount among the Reorganized Debtor and the holder of the Allowed Claim, or (b) otherwise adjudicated by the Bankruptcy Court or another court of competent jurisdiction; provided, however, that neither the failure to effectuate a setoff or recoupment nor the allowance of any Claim hereunder shall constitute a waiver or release by a Reorganized Debtor or its successor of any and all claims, rights, and Litigation Claims that the Reorganized Debtor or its successor may possess against the applicable holder. In no event shall any holder of a Claim be entitled to recoup such Claim against any claim, right, or Litigation Claim of the Debtor or the Reorganized Debtor, as applicable, unless such holder actually has performed such recoupment and provided notice thereof in writing to the Debtor on or before the Effective Date, notwithstanding any indication in any proof of claim or otherwise that such holder asserts, has, or intends to preserve any right of recoupment.

G.      *Claims Estimation*

The Debtor may request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to section 502(c) of the Code, regardless of whether the Debtor has previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal related to any such objection.  In the event the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount will

constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, the Debtor may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim. All aforementioned objections, estimation and resolution procedures are cumulative and are not necessarily exclusive of one another. Claims may be estimated and thereafter resolved by any permitted mechanism.

**ARTICLE IX.**

**RELEASE, DISCHARGE, AND INJUNCTION**

A.     *Releases by Holders of Claims and Equity Interests under 11 U.S.C. § 1191(a)*

This provision applies in the event the Plan is confirmed under 11 U.S.C. § 1191(a). As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, (a) each holder of a Claim that does not vote to reject the Plan, solely in its capacity as the holder of such Claim, and (b) to the fullest extent permissible under applicable law, as such law may be extended or interpreted after the Effective Date, each person or entity (other than the Debtor), which has held, holds or may hold a Claim or Equity Interest in or relating to the Debtor and solely in its capacity as the holder of such Claim or Equity Interest, shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever, released and discharged the Debtor and the Reorganized Debtor from any and all Claims, Equity Interests, obligations, rights, suits, damages, causes of action, remedies, and liabilities whatsoever, including any derivative Claims, asserted or that could be asserted by or on behalf of any such holder, person or entity, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, that such holder, person or entity would have been legally entitled to assert in its own right (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtor, the Debtor's restructuring, the Case, the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in the Plan, the business or contractual arrangements or other dealings between the Debtor and any Released Party, the restructuring of Claims and

Equity Interests prior to or in the Case, the negotiation, formulation, or pre-petition of the Plan, any Plan Documents, or related agreements, instruments, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date of the Plan; *provided, however*, that, as to all Persons, nothing in this section shall affect (a) the liability (if any) of any Person that otherwise would result from any act or omission constituting fraud unknown to the Debtor as of the Confirmation Date, or (b) the ability of the Reorganized Debtor to pursue the Litigation Claims.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) any Claims or liabilities assumed by the Reorganized Debtor pursuant to the Plan or any other Plan Documents or otherwise arising on or after the Effective Date under any of the Plan Documents or (ii) any post-Effective Date obligations of any party under the Plan or any other Plan Document.

B.    *Discharge*

If the Debtor's Plan is confirmed under § 1191(a), on the effective date of the Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor will not be discharged of any debt:

> i. imposed by this Plan; or ii. to the extent provided in § 1141(d)(6).

If the Debtor's Plan is confirmed under § 1191(b), confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments due within the first 3 years of this Plan, or as otherwise provided in § 1192 of the Code.

C.    *Injunction*

Except as provided in the Plan, the other Plan Documents or the Confirmation Order, as of the Confirmation Date, subject to the occurrence of the Effective Date, all persons that have held, currently hold or may hold Claims or Equity Interests that are discharged, are permanently enjoined from taking any of the following actions against the Debtor or the Reorganized Debtor or their property on account of Claims or Equity Interests: (a) commencing or continuing, in any manner or in any place, any action or other

proceeding; (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (c) creating, perfecting or enforcing any lien or encumbrance; (d) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to the Debtor; and (e) commencing or continuing any action, in each case in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan. By accepting any distribution pursuant to the Plan, each holder of an Allowed Claim receiving distributions pursuant to the Plan shall be deemed to have specifically consented to the injunctions herein.

D.     *No Waiver.*

The release set forth in this Plan does not limit, abridge, or otherwise affect the rights of the Reorganized Debtor to enforce, sue on, settle, or compromise the rights, claims and other matters retained by the Reorganized Debtor pursuant to this Plan.

E.     *Deemed Consent.*

By voting to accept this Plan or accepting any distribution directly under this Plan, each holder of a Claim will be deemed to the fullest extent permitted by applicable law to have specifically consented to the releases and injunctions set forth herein.

## ARTICLE X.

## RETENTION OF JURISDICTION

The Bankruptcy Court shall retain and have exclusive jurisdiction over the Case for the following purposes:

- To determine any and all objections to the allowance of Claims or Interests;
- To determine any and all applications for allowance of compensation and reimbursement of expenses and any other fees and expenses authorized to be paid or reimbursed under the Code or the Plan;
- To determine any applications or motions pending on the Effective Date for the rejection, assumption or assumption and assignment of any Executory Contract with respect to which the Debtor may be liable, and to hear and determine the amount of any Claim arising out of the rejection or assumption of an Executory Contract;

- To determine any and all applications, adversary proceedings and contested matters that may be pending on the Effective Date;
- To consider and approve any modification of this Plan, remedy any defect or omission, or reconcile any inconsistency in any order of the Court, including the order of Confirmation;
- To determine all controversies, suits and disputes that may arise in connection with the interpretation, enforcement, or consummation of the Plan;
- To consider and act on the compromise and settlement of any Claim or cause of action by or against the Debtor;
- To issue orders in aid of execution of this Plan to the extent authorized by section 1142 of the Code or otherwise;
- To determine matters covering state, local and federal taxes pursuant to sections 346, 525 and 1146 of the Code; and/or
- To determine other matters as may be set forth in the order of Confirmation or which may arise in connection with the Plan or the order of Confirmation.

## ARTICLE XI.

## OTHER PROVISIONS

A.   *Governance of the Reorganized Debtor*

On the Effective Date, operation of the Debtor shall revert to the officers and board of managers that existed prior to the appointment of Eric Terry.  The Reorganized Debtor shall be authorized to adopt any other agreements, documents, and instruments and to take any other actions contemplated under the Plan as necessary to consummate the Plan. Cash payments to be made pursuant to the Plan will be made by the Disbursing Agent. From and after the Effective Date, the Reorganized Debtor shall have the right and authority without further order of the Bankruptcy Court to raise additional capital and obtain additional financing.

B.   *Corporate Existence*

The Debtor shall continue to exist after the Effective Date as a separate limited liability company (*i.e.*, the Reorganized Debtor), with all the powers of a limited liability

company pursuant to the applicable law in the jurisdiction in which the Debtor is incorporated or formed and pursuant to the formation documents in effect prior to the Effective Date, except to the extent such formation documents are amended, amended and restated, or replaced under the Plan or otherwise, including pursuant to any new organizational documents, and to the extent such documents are amended in accordance therewith, such documents are deemed to be amended, amended and restated, or replaced pursuant to the Plan and require no further action or approval (other than any requisite filings required under applicable state, provincial, or federal law). After the Effective Date, the formation documents of the Reorganized Debtor may be amended or modified on the terms therein without supervision or approval by the Bankruptcy Court and free of any restrictions of the Code or Bankruptcy Rules.

C.  *Vesting of Assets*

Except as otherwise provided herein or in the Confirmation Order, the Plan, or any agreement, instrument, or other document incorporated in, or entered into in connection with or pursuant to the Plan, on the Effective Date, all property in the estate that constitutes property of the estate under section 541 of the Code, and any property acquired by the Debtor pursuant to the Plan shall vest in the Reorganized Debtor, free and clear of all liens, claims, charges, or other encumbrances, except as otherwise set forth in the Plan. On and after the Effective Date, except as otherwise provided in the Plan, the Reorganized Debtor may operate its business and may use, acquire, or dispose of property without supervision or approval by the Bankruptcy Court and free of any restrictions of the Code.

D.  *Corporate Action*

Upon the Effective Date, all actions contemplated under the Plan shall be deemed authorized and approved.

E.  *Securities Laws*

Any satisfaction provided to any Creditor or Interest holder pursuant to this Plan which may be deemed to be a security is exempt from registration under section 1145 of the Code and under certain state and federal securities laws. However, absent registration or another exception, subsequent transfer of any such possible security may not be exempt.

F.    *Definitions and Rules of Construction.*

The definitions and rules of construction set forth in sections 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in the Plan, and they are supplemented by the terms herein.

G.    *Severability.*

If any provision in the Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of the Plan.

H.    *Captions.*

The headings contained in the Plan are for convenience of reference only and do not affect the meaning or interpretation of the Plan.

I.    *Immediate Binding Effect.*

Upon the occurrence of the Effective Date, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon the Debtor, the Reorganized Debtor, any and all holders of Claims or Interests (irrespective of whether such holders of Claims or Interests have, or are deemed to have accepted the Plan), all entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each entity acquiring property under the Plan, and any and all non-Debtor parties to executory contracts and unexpired leases with the Debtor.

J.    *Successors and Assigns.*

The rights, benefits, and obligations of any entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, affiliate, officer, manager, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each entity.

K.    *Modification.*

The Debtor may amend, modify, or withdraw the Plan at any time prior to the Confirmation Date. After the Effective Date, Debtor may propose amendments to the Plan for approval by the Bankruptcy Court.

L.       *Cramdown.*

The Debtor requests confirmation of the Plan under Section 1129(b) of the Bankruptcy Code with respect to any impaired Class that does not accept the Plan pursuant to Section 1126 of the Bankruptcy Code.  The Debtor reserves the right to modify the Plan to the extent, if any, that Confirmation pursuant to Section 1129(b) of the Bankruptcy Code requires modification.

M.       *Entire Agreement.*

Except as otherwise indicated, the Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

N.       *Notices.*

All notices, requests and demands to or upon the Debtor or the Reorganized Debtor shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

**Dean W. Greer**
**2929 Mossrock, Suite 204**
**San Antonio, TX 78230**
**Facsimile:  (210) 342.3633**
**Email: dean@dwgreerlaw.com**

**Palladium Corral, LLC**
**911 W. Loop 1604**
**Helotes, Texas 78249**

**And copies to the United States Trustee to:**

**James W. Rose, Jr.**
**Trial Attorney**
**United States Department of Justice**
**Office of the U.S. Trustee**
**San Antonio, TX**
**Facsimile: (210) 472-4649**
**Email: james.rose@usjog.gov**

**And copies to the Chapter 11 Trustee to:**

**Eric Terry**
**Eric Terry Law, PLLC**
**3511 Broadway St.**
**San Antonio, Texas 78209**
**Email: eric@ericterrylaw.com**

Any delivery after 5:00 p.m., prevailing Central time, on a Business Day, or on a day that is not a Business Day, shall be deemed to have been made on the immediately following Business Day.

Respectfully Submitted,

/s/Dean W. Greer
Dean W. Greer
West & West Attorneys at Law, P.C.
2929 Mossrock, Suite 204
San Antonio, Texas 78230
Telephone: 210.342.7100
Facsimile:  210.342.3633
Email: dean@dwgreerlaw.com
State Bar No. 08414100
Attorney for Debtor

Brian J. Smith, Managing Member
Palladium Corral, LLC

And copies to the Chapter 11 Trustee to:

Eric Terry
Eric Terry Law, PLLC
3511 Broadway St.
San Antonio, Texas 78209
Email: eric@ericterrylaw.com

Any delivery after 5:00 p.m., prevailing Central time, on a Business Day, or on a day that is not a Business Day, shall be deemed to have been made on the immediately following Business Day.

Respectfully Submitted,

/s/Dean W. Greer
Dean W. Greer
West & West Attorneys at Law, P.C.
2929 Mossrock, Suite 204
San Antonio, Texas 78230
Telephone: 210.342.7100
Facsimile:  210.342.3633
Email: dean@dwgreerlaw.com
State Bar No. 08414100
Attorney for Debtor

Brian J. Smith, Managing Member
Palladium Corral, LLC